[L.A. No. 30381. In Bank. Oct. 23, 1975.]

PIERRE ROLAND DUPUY, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES
COUNTY, Respondent;
FRANCHISE TAX BOARD et al., Real Parties in Interest.

**COUNSEL**

Michael Korn and Kaufman & Rothman for Petitioner.

No appearance for Respondent.

Evelle J. Younger, Attorney General, Philip C. Griffin and Lawrence K. Keethe, Deputy Attorneys General, for Real Party in Interest.

## OPINION

**McCOMB, J.**—Petitioner seeks a writ of mandate to compel respondent court to rule on the merits of his request for a preliminary injunction against the Franchise Tax Board (hereinafter referred to as "the board"), one of the real parties in interest.

*Facts:* On or about December 11, 1973, the board sent petitioner a notice informing him that he owed for the taxable year 1972 additional income taxes (including interest) of $40,569.27. The board's claim was based on its determination that petitioner's income exceeded by $390,000 the amount he had declared on his income tax return.[1] At the same time, the board sent petitioner another notice terminating as of December 7, 1973, his current tax period, determining that his taxable income for such period was $367,500, and assessing a tax of $39,525 by reason thereof.[2] In the notices, the board gave no indication from what source petitioner's alleged additional income was purportedly derived. The notices declared that the collection of the assessments would be jeopardized by delay and notified petitioner that in accordance with section 18643 the assessments were immediately due and payable.[3] The notices further informed petitioner that he could stay collection of the tax by filing a petition for reassessment with the board within 60 days of the date of the notices, accompanied by a bond in the amount of $88,104.[4] Petitioner was in Mexico at the time the notices were mailed to him.

---

[1]Petitioner's 1972 tax return shows a taxable income of $33,897.

[2]Section 18642 of the Revenue and Taxation Code provides, in part: "In the case of a tax for a current period, the Franchise Tax Board may declare the taxable period of the taxpayer immediately terminated."

Unless otherwise indicated, all statutory references herein are to the Revenue and Taxation Code.

[3]Section 18643, subdivision (a) provides: "A jeopardy assessment is immediately due and payable, and proceedings for collection may be commenced at once."

[4]The notice respecting the 1972 jeopardy tax assessment indicated that the amount of bond to stay collection thereof was $44,626, while the notice respecting the 1973 jeopardy tax assessment indicated that the amount of bond to stay collection of that assessment was $43,478. Thus, the total required to stay collection for the two assessments was $88,104.

In the body of each notice, it is stated: "You may stay collection, at any time before this notice becomes final [under section 18644 a jeopardy assessment becomes final within 60 days of the mailing of notice thereof], by filing with the Franchise Tax Board a

The record herein consists of petitioner's complaint and supporting affidavits, on the basis of which he sought to restrain collection of the tax. The board did not attempt to make any factual showing by way of an answer or affidavits, but, rather, resisted issuance of the preliminary injunction solely on the ground that respondent court lacked jurisdiction to enjoin collection of the tax by virtue of the anti-injunction provision of former article XIII, section 15, of the California Constitution.[5] Under the circumstances, the facts before us are of necessity limited to the uncontroverted allegations of petitioner's complaint and the assertions in his supporting affidavits. (See *People* v. *St. Martin,* 1 Cal.3d 524, 537-538 (15) [83 Cal.Rptr. 166, 463 P.2d 390]; *Sequoia Pine Mills, Inc.* v. *Superior Court,* 258 Cal.App.2d 65, 69-70 [5] [65 Cal.Rptr. 353].)

In addition to the facts hereinabove set forth, the complaint alleges that petitioner, 38 years old, is a citizen of the United States and of the State of California, has been a resident of the San Fernando Valley area

bond in the amount indicated above or other security in such amount as the Franchise Tax Board may deem necessary, not exceeding double the amount (together with interest thereon to the date of payment) as to which the stay is desired."

Section 18643, subdivision (b), provides, in part: "The collection of the whole or any amount of a jeopardy assessment may be stayed, at any time before the assessment becomes final, by filing with the Franchise Tax Board: (1) a bond in an amount equal to the amount (together with interest thereon to the date of payment) as to which the stay is desired . . . or (2) other security in such amount as the Franchise Tax Board may deem necessary, not exceeding double the amount (together with interest thereon to the date of payment) as to which the stay is desired."

Section 18643, subdivision (d), provides: "The Franchise Tax Board may, prior to the time the assessment becomes final, stay collection of the whole or any amount of a jeopardy assessment if it finds that jeopardy does not exist." From the record, however, it does not appear that petitioner was notified that if he could show that jeopardy did not exist, he could obtain a stay. In fact, the notices sent to him specifically stated, just prior to the paragraph set forth in the second paragraph of this footnote, "COLLECTION MAY BE STAYED ONLY AS EXPLAINED BELOW." The only reference thereafter to a stay is that contained in the paragraph quoted above. Additionally, although petitioner's counsel requested in letters to the board that the matter be set down for hearing as soon as possible, the board responded on January 24, 1974, that "an oral hearing would be premature at this time."

[5]Article XIII, section 15, provided, in part: "No injunction or writ of mandate or other legal or equitable process shall ever issue in any suit, action or proceeding in any court against this State, or any officer thereof, to prevent or enjoin the collection of any tax levied under the provisions of this article; but after payment thereof action may be maintained to recover, with interest, in such manner as may be provided by law, any tax claimed to have been illegally collected."

By Proposition 8, passed by the voters of the State of California on November 5, 1974, article XIII of the California Constitution was extensively revised. Section 15 was repealed, and the provisions thereof are now covered by section 32, which reads, as follows: "No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature."

of Los Angeles County all of his life, is employed as the general manager of Kolbe Cycle Sales, in Reseda, California, has never been convicted of a crime under the laws of the State of California or the United States, and has never sought to flee from the United States or to transfer any of his assets outside of the State of California.

The complaint further alleges that on or about December 11, 1973, the board seized a promissory note and similar items of personal property belonging to petitioner and that about two days after the date of the notices it directed the Marshal of Los Angeles County to levy and sell certain additional personal property belonging to petitioner. The marshal's sale was scheduled for January 11, 1974, and petitioner received notice thereof. His complaint was filed on January 10, 1974, the day before the sale was to take place.

The complaint also states that the amounts claimed by the board to represent petitioner's income and deficiency were arbitrary and without basis in fact and did not reflect his income for any of the claimed periods. In the complaint, petitioner contended that the procedure employed by the board in seizing his property was unconstitutional; and he sought declaratory and injunctive relief, asking that respondent court enjoin the scheduled sale of his property by the marshal and declare that the procedure utilized by the board was unconstitutional and violative of the Fourteenth Amendment of the United States Constitution. He further sought return of the property seized by the board and the marshal. The affidavits filed by petitioner substantiated certain of the facts hereinabove set forth.

On the day petitioner's complaint was filed, respondent court issued an ex parte temporary restraining order enjoining the sale, together with an order to show cause thereon. After a hearing on the order to show cause, respondent court indicated that it was favorably disposed to granting injunctive relief to petitioner, but that it had concluded that it lacked jurisdiction to do so, in view of the anti-injunction provision of former article XIII, section 15, of the California Constitution. No showing was made by the board that there was any foundation for the jeopardy assessments against petitioner, the attorney representing the board indicating to respondent court at the hearing on the order to show cause that in his opinion the law did not require an evidentiary hearing on the facts at that time. Moreover, the attorney frankly stated, "I personally don't have the facts behind the jeopardy assessment."[6]

---

[6]From an affidavit filed by the board in this court, it appears that the jeopardy assessments were based on a claim that petitioner had derived the alleged unreported income from the sale of narcotics. As hereinabove pointed out, the board was

At the conclusion of the hearing, respondent court continued the temporary restraining order in effect for 30 days to give the parties time to obtain a determination of the issue in the appellate courts.[7] On August 20, 1974, respondent court made an order denying a preliminary injunction and further continuing the restraining order in effect pending final determination of proceedings in the appellate court to be instituted by petitioner. Thereafter, petitioner sought a writ of mandate in the Court of Appeal to compel respondent court to rule on the merits of his claim. The Court of Appeal denied the writ without opinion, and we granted a hearing.

*Question: Does the jeopardy tax assessment and collection procedure authorized by sections 18641-18653 of the Revenue and Taxation Code, permitting seizure and sale of a taxpayer's property without affording him a prior hearing, deprive him of due process?*

▇▇ As will hereinafter be explained, the answer is a negative one insofar as the procedure relates to *seizure* of the taxpayer's property but a positive one insofar as it relates to the *sale* of his property.

Under the Revenue and Taxation Code, the administrative remedies afforded a taxpayer differ widely according to whether the board makes a "deficiency assessment" under section 18583 or, as here, a "jeopardy assessment" under section 18641. In the former case, the taxpayer, by filing a written protest with the board within 60 days after the mailing of the notice of deficiency (§ 18590), becomes entitled to a hearing before

represented at the order to show cause hearing by an attorney who allegedly had no knowledge of the basis for the assessments. That hearing was held on January 24, 1974, more than six weeks after the jeopardy assessments were made and, as will hereinafter appear, almost seven months before respondent court entered its order herein denying a preliminary injunction on the ground of lack of jurisdiction. There is no evidence *in the record* that either petitioner or respondent court was given notice of the basis for the board's action either before or after the hearing on the order to show cause.

[7]Respondent court's extraordinary action was apparently based on a belief that the anti-injunction rule would work a great injustice in this case. Thus, among other things, the court stated: "I am just saying that you have taken his assets and are threatening to sell them without any disclosure to him as to the fraud or without a hearing, without anything. You know, all I can say is that it appears to be tyrannical. You may have every equity in the world on your side, but you haven't disclosed them, and this is the worst type of tyranny . . . . [Y]ou are retreating behind the Revenue Code and say that the king can do no wrong because it is the king.

"You would rather sell his stuff first, and then when he comes crawling to you, then you are going to say, 'Well, we are going to have a hearing now, and we sold all of your property at a distress sale, and you are bankrupt, but too bad.' "

"So you are going to ruin him, and then after you have ruined him, then you are going to say, 'Too bad, old man, we made a mistake, but we are the State and you can't do anything about it.' "

the board to contest the validity of the proposed assessment (§ 18592). If the board determines the matter adversely to the taxpayer, he may appeal to the Board of Equalization (§ 18593), in which event he becomes entitled to a hearing before that body (§ 18595). If the Board of Equalization finds in favor of the board, the taxpayer may petition for a rehearing. If such a petition is denied, the deficiency assessment becomes final upon the expiration of 30 days from the time the Board of Equalization issues its opinion (§ 18596), and the amount assessed is then due and payable. Thus, simply by availing himself of the administrative remedies outlined above, a taxpayer against whom a deficiency tax assessment has been made is able to stay collection of the tax for a substantial period of time.

On the other hand, under the Revenue and Taxation Code a taxpayer against whom a jeopardy tax assessment has been made may stay seizure *and sale* of his property only if he posts a bond, or other security, in the amount set by the board or shows that jeopardy does not exist; and he is not entitled to an administrative hearing *before* seizure *and sale* of his property unless he does so. Furthermore, the anti-injunction provision of former article XIII, section 15, of the California Constitution precludes judicial review of the board's assessment prior to collection of the tax. (*Horack* v. *Franchise Tax Board,* 18 Cal.App.3d 363, 370 [95 Cal.Rptr. 717].)

▉ Procedural due process does not require *judicial* determination of tax liability before collection of a tax (*Phillips* v. *Commissioner of Internal Revenue,* 283 U.S. 589, 597-599 [75 L.Ed. 1289, 1297-1299, 51 S.Ct. 608]; *Aronoff* v. *Franchise Tax Board,* 60 Cal.2d 177, 179 [32 Cal.Rptr. 1, 383 P.2d 409]); and, as pointed out in *Phillips,* it is established that the government may effect collection of taxes by summary administrative proceedings (p. 595 of 283 U.S. [p. 1296 of 75 L.Ed.]). Since a taxpayer might conceivably, after receiving notice of a tax assessment against him, dissipate his assets and thus make it impossible for the government to collect the tax owed, the rationale of both *Phillips* and *Aronoff* suggests that the government may properly require that before being entitled to a preseizure administrative hearing the taxpayer must post a bond or other security; and we so hold.

The "need of the government promptly to secure its revenues," as expressed by the *Phillips* court (p. 596) of 283 U.S. [p. 1297 of 75 L.Ed.]), has long been recognized. This is one of the types of extraordinary situations to which the Supreme Court undoubtedly had reference when

it stated in *Sniadach* v. *Family Finance Corp.,* 395 U.S. 337, 339 [23 L.Ed.2d 349, 352, 89 S.Ct. 1820], "Such summary procedure may well meet the requirements of due process in extraordinary situations." (See *Fuentes* v. *Shevin,* 407 U.S. 67, 90-92 [32 L.Ed.2d 556, 575-577, 92 S.Ct. 1983].)

Although the requirement that a bond or other security be posted is justified insofar as it stays *seizure* of the taxpayer's property, no legitimate government function is served by such a requirement with respect to staying a *sale* of the property, because the seizure of the property has effectively prevented the taxpayer from defeating collection of the tax. Technically, the taxpayer is entitled to stay both seizure and sale of the property by posting the required bond or other security, but such remedy may be largely illusory. For example, where the taxpayer has no other property and would have used the seized property as collateral to obtain a bond, he is not in a position to post one.

The only remedy provided by the statutory scheme is a suit for a refund under section 19082 after seizure and sale of the property.[8] However, the fair market value is rarely realized at a forced sale, and the amount which the taxpayer would be entitled to recover if he succeeds in having the assessment declared invalid is limited to the amount obtained at the sale.

Since no legitimate interest of the state would be prejudiced by affording the taxpayer an administrative hearing prior to the sale of his property, and the disruption in the revenue collection procedures would be minimal, we hold that, although no hearing is required prior to seizure of the property, due process requires that the taxpayer be afforded, if desired, an administrative hearing prior to *sale* of his property. Such protection is given to the taxpayer by the federal jeopardy tax assessment procedure, under which a sale of the taxpayer's property is prohibited until 90 days (150 if the taxpayer is out of the country) after the notice of deficiency has been sent or, if the taxpayer petitions the Tax Court for a redetermination, until after the decision of that body has become final. (26 U.S.C. § 6863 (b) (3); see Federal Tax Procedure for General Practitioners (Cont. Ed. Bar 1968) § 4.5, p. 137.)

---

[8]Section 19082 provides: "Except as provided in Section 19085, after payment of the tax and denial by the Franchise Tax Board of a claim for refund, any taxpayer claiming that the tax computed and assessed against him under this part is void in whole or in part may bring an action, upon the grounds set forth in his claim for refund, against the Franchise Tax Board for the recovery of the whole or any part of the amount paid."

■ Under the circumstances, since the anti-injunction provision of the California Constitution must yield to the paramount provisions of the United States Constitution (Cal. Const., art. III, § 1), petitioner is entitled to enjoin the marshal's sale of his property pending an administrative hearing on the right of the board to direct that the property be sold.

Our decision herein, that the taxpayer cannot require that he be given a hearing before his property is seized under a jeopardy tax assessment but may require that, without posting a bond or other security, he be afforded a hearing before such property is sold, comports with our recent holding in *Adams* v. *Department of Motor Vehicles,* 11 Cal.3d 146 [113 Cal.Rptr. 145, 520 P.2d 961, 64 A.L.R.3d 803].

Let a peremptory writ of mandate issue directing respondent court to vacate its order denying the preliminary injunction and instructing the court to proceed in accordance with the views expressed herein.

Wright, C. J., Tobriner, J., Mosk, J., Sullivan, J., Clark, J., and Richardson, J., concurred.

Petitioner's application for a rehearing was denied November 20, 1975. Tobriner, J., was of the opinion that the application should be granted.