[S.F. No. 24111. June 5, 1980.]

PACIFIC GAS AND ELECTRIC COMPANY et al.,
Plaintiffs and Appellants, v.
STATE BOARD OF EQUALIZATION, Defendant and Respondent.

**COUNSEL**

Malcolm H. Furbush, Joseph I. Kelly, John C. Morrissey, Richard F. Locke, Patrick G. Golden, Richard H. Moss, Gordon Pearce, L. Earl Ligon, John R. Bury, Robert J. Cahall, L. Christian Hauck and Philip Walsh for Plaintiffs and Appellants.

George Deukmejian, Attorney General, Ernest P. Goodman, Assistant Attorney General, Philip C. Griffin and Patti S. Kitching, Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

**MOSK, J.**—Three public utility companies filed this action for mandamus and declaratory relief to compel the State Board of Equalization

(Board) to adjust the assessment of their real property to its 1975-1976 value in accordance with the recently enacted article XIII A of the California Constitution.[1] The Board refused to do so on the ground that article XIII A, section 2, subdivision (a), refers only to county-assessed real property, whereas property owned by public utilities is assessed by the Board itself. (Cal. Const., art. XIII, § 19; Rev. & Tax. Code, § 751 et seq.)

We conclude that the utilities' action is barred as a procedural matter by article XIII, section 32, of the Constitution, and that their proper recourse is an action for refund under Revenue and Taxation Code sections 5096 and 5140.

Pacific Gas and Electric Company (PG&E) produces electricity, gas, steam and water, and owns property in 50 counties in California; Southern California Edison provides electricity only and owns property in 13 counties; San Diego Gas and Electric produces electricity, gas and steam, and owns property in 3 counties. As appraised by the Board in May 1978, their combined taxable property was valued in excess of $12 billion. A few weeks after article XIII A became effective, PG&E requested a ruling from the Board regarding the applicability of the initiative's "rollback" provision to state-assessed public utility property. The Board declined to adjust its 1978 assessments of PG&E's property to conform with subdivision (a) of section 2. Its action was upheld by the superior court, which ruled that the rollback provision does not apply to state-assessed property and denied relief.

■ At the outset we must determine whether the action is barred because the utilities failed to proceed by payment of the tax and suit for refund. (Rev. & Tax. Code, §§ 5096, 5140.)[2]

Article XIII, section 32, of the Constitution provides, "No legal or equitable process shall issue in any proceeding in any court against this

[1]Article XIII A, popularly known as Proposition 13, was adopted by initiative on June 6, 1978. As amended, it presently reads in pertinent part:

"Section 1. (a) The maximum amount of any ad valorum tax on real property shall not exceed one percent (1%) of the full cash value of such property...

"Section 2. (a) The full cash value means the county assessor's valuation of real property as shown on the 1975-76 tax bill under 'full cash value'...."

Section 2, subdivision (a), is also known as the assessment "rollback" provision.

[2]The Board raised this issue both by demurrer and affirmative defense, but the judgment is silent on the point.

State or any officer thereof to prevent or enjoin the collection of any tax. After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature."[3]

On its face the provision appears to bar actions of the type before us. It is certainly true that the assessment of real property is an integral part of the taxing process, and a court order invalidating an assessment will in effect "prevent or enjoin the collection" of the tax. (See *Jillson* v. *Board of Supervisors* (1963) 221 Cal.App.2d 192, 194 [34 Cal.Rptr. 419]; cf. *Modern Barber Col.* v. *Cal. Emp. Stab. Com.* (1948) 31 Cal. 2d 720, 723 [192 P.2d 916].) It is also the rule that a taxpayer may not circumvent restraints on prepayment tax litigation by seeking only declaratory relief. (*Honeywell, Inc.* v. *State Bd. of Equalization* (1975) 48 Cal.App.3d 907, 912 [122 Cal.Rptr. 243]; *Casey* v. *Bonelli* (1949) 93 Cal.App.2d 253, 254 [208 P.2d 723]; *Louis Eckert B. Co.* v. *Unemploy. R. Com.* (1941) 47 Cal.App.2d 844, 846 [119 P.2d 227].)[4]

The utilities, however, seek to avoid the seemingly absolute bar of section 32 by asserting that they have no other adequate remedy at law. The payment and refund procedure is unsatisfactory, they urge, because it requires them to file claims in several counties. As authority, they cite *San Diego etc. Ry. Co.* v. *State Board* (1913) 165 Cal. 560 [132 P. 1044], in which the taxpayer-railroad challenged the Board's classification of certain property under the then-existing gross receipts tax. This court granted a writ of mandate on the ground that the taxpayer had no speedy and adequate remedy at law (*id.* at p. 564), but the opin-

---

[3]Since 1910 there have been similar constitutional provisions which have been subject to numerous minor revisions and renumberings. (See fn. 5, *post.*) For convenience, we refer to all such provisions as "section 32."

[4]*Pacific Motor Transport Co.* v. *State Bd. of Equalization* (1972) 28 Cal.App.3d 230 [104 Cal.Rptr. 558], is not to the contrary. There the court permitted a prepayment declaratory action under former Government Code section 11440 (now § 11350) to test the validity of a tax regulation that was subject to the rulemaking provisions of the California Administrative Procedure Act (now Gov. Code, tit. 2, div. 3, pt. 1, ch. 3.5). Nevertheless, the court stressed that "The relief afforded may not 'prevent or enjoin' or otherwise hamper present or future tax assessment or collection effort. . . . It will be presumed that the governmental agency will respect a judicial declaration concerning a regulation's validity. If it does not the taxpayer's remedy lies in paying the assessed taxes and then commencing action based upon such invalidity for their refund." (*Id.* at p. 236.) In the case at bar, of course, we are not concerned with the validity of a tax regulation.

ion offered no explanation as to why the available legal remedies were insufficient. The utilities contend that the answer to this question appeared a half century later in *Starkist Foods, Inc.* v. *Quinn* (1960) 54 Cal.2d 507 [6 Cal.Rptr. 545, 354 P.2d 1]. The taxpayer in that case alleged that the assessment methods of the County of Los Angeles were unconstitutional and sought mandate to compel reassessment. We denied the writ because of the adequacy of the taxpayer's legal remedy, a refund claim; in passing, we distinguished *San Diego* on the ground that the taxpayer in that case would have been forced to sue for recovery from a number of local taxing authorities. (*Id.* at p. 512.)

The utilities' reliance on *San Diego* and *Starkist* is misplaced. In 1913, when *San Diego* was written, the forerunner of section 32 read only that "no injunction" shall issue to interfere with tax collections.[5] As the taxpayer sought mandate, the court invoked the traditional test for determining the availability of that writ. (Code Civ. Proc., § 1085.) On the other hand, *Starkist* involved a *county* assessment, and hence did not require any analysis of section 32;[6] the availability of mandate to review claims asserted against county tax authorities is determined by the statutory test of section 1085. (See, e.g., *Security-First Nat. Bk.* v. *Bd. of Supervisors* (1950) 35 Cal.2d 323, 327 [217 P.2d 948]; *Valley Fair Fashions, Inc.* v. *Valley Fair* (1966) 245 Cal.App.2d 614, 616 [54 Cal.Rptr. 306].) In context, the dictum in *Starkist* relied on by the utilities thus stands at most for the commonplace proposition that potential multiplicity of actions is a ground for the issuance of a discretionary writ under section 1085; it cannot be interpreted as establishing an "inadequate remedy at law" exception to the unequivocal constitutional prohibition against prepayment tax litigation.

---

[5]Article XIII, section 14, subdivision (g), provided: "No injunction shall ever issue in any suit, action or proceeding in any court against this State or against any officer thereof to prevent or enjoin the collection of any tax levied under the provisions of this section; but after payment action may be maintained to recover any tax illegally collected...."

In 1933, the provision was dropped from section 14. However, an identical provision in section 15 was then amended to read, "No injunction or writ of mandate or other legal or equitable process shall ever issue...to prevent or enjoin the collection of any tax levied under the provisions of this article...."

In 1974, this provision was placed in separate section 32 and amended to its present form.

[6]Section 32 applies only to actions against the state. (*Eisley* v. *Mohan* (1948) 31 Cal.2d 637, 641 [192 P.2d 5].)

The question therefore remains whether an "inadequate remedy at law" exception to the rule barring judicial interference with the state taxing process should now be recognized.

The earliest restraints on the use of judicial power to intervene in the collection of taxes, predating any explicit statutory or constitutional restrictions, were based merely on the traditional tests of equity: a taxpayer could receive equitable relief only if faced with an irreparable injury without adequate remedy at law. (*De Witt* v. *Hays* (1852) 2 Cal. 463, 468-469; *Robinson* v. *Garr* (1856) 6 Cal. 273, 275; *Ritter* v. *Patch* (1859) 12 Cal. 298; *Sav. and Loan Society* v. *Austin* (1873) 46 Cal. 415, 489; *Crocker* v. *Scott* (1906) 149 Cal. 575, 594-595 [87 P. 102].) Even in the absence of constitutional guidance, courts recognized the dangers inherent in delaying collection of needed public revenue and were extremely reluctant to interfere with the taxation process before payment. For example, the most severe financial hardship resulting in bankruptcy was judged not to be an irreparable injury sufficient to permit judicial intervention. (*California* v. *Latimer* (1938) 305 U.S. 255, 262 [83 L.Ed. 159, 164, 59 S.Ct. 166]; *Modern Barber Col.* v. *Cal. Emp. Stab. Com., supra*, 31 Cal.2d 720, 732.)

Essentially the utilities' contention is that the adoption of section 32 and statutes similarly worded was a mere restatement of the former equity practice. But this thesis was firmly rejected, albeit in dictum, in *Modern Barber Col.* v. *Cal. Emp. Stab. Com., supra*, 31 Cal.2d at page 725: "'The provision of the California Constitution is much more than a mere declaration of the rules generally applicable in proceedings for injunction, mandamus, or other legal or equitable relief.' . . . It follows that cases such as *Miller* v. *Standard Nut Margarine Co.*, 284 U.S. 498 [52 S.Ct. 260, 76 L.Ed. 422], which discuss the various instances under which an injunction may be available according to the common law rules of equity or under statutes restating them are not relevant here." Indeed, the utilities are unable to cite a single case in which mandate has been granted under the present constitutional restrictions.[7] On the contrary, in *Aronoff* v. *Franchise Tax Bd.* (1963) 60 Cal.2d 177, 180

---

[7] Some courts have denied mandate on the ground that the taxpayer's legal remedies were adequate, thus raising the implication that the writ might issue if they were not. (*Starkist Foods, Inc.* v. *Quinn, supra*, 54 Cal.2d 507, 511; *Honeywell, Inc.* v. *State Bd. of Equalization, supra*, 48 Cal.App.3d 907, 912; *Jillson* v. *Board of Supervisors, supra*, 221 Cal.App.2d 192, 194-195.) It is significant that these cases dealt not with section 32, but with similar statutory provisions relating either to other types of taxes or to county property assessments.

[32 Cal.Rptr. 1, 383 P.2d 409], one of the few decisions dealing directly with a forerunner of section 32, we held that the constitutional provision "operate[s] to prohibit issuance of the writ [of prohibition] prayed for."[8]

The utilities complain they will be forced to litigate in more than 50 counties in order to recover their alleged overpayments, and the hardship of such a process should entitle them to a prepayment adjudication on the merits. While we agree that multiple-forum litigation is undesirable both from the viewpoint of the parties and the overburdened court system, the utilities' fears are exaggerated. They may actually proceed in a far more expeditious manner, either by coordinating their actions (Code Civ. Proc., § 404 et seq.; Cal. Rules of Court, rule 1501 et seq.) or by choosing a target forum and, in the event they receive a favorable judgment invalidating the Board's decision, obtaining refunds from the remaining counties through administrative procedures. (Rev. & Tax. Code, § 5096.) Public utilities in a similar position in the past have proceeded via a comparable method. (*ITT World Communications, Inc.* v. *County of Santa Clara* (1980) 101 Cal.App.3d 246 [162 Cal.Rptr. 186]; *Southern Cal. Tel. Co.* v. *Los Angeles* (1941) 45 Cal.App.2d 111 [113 P.2d 773].)

The policy behind section 32 is to allow revenue collection to continue during litigation so that essential public services dependent on the funds are not unnecessarily interrupted. (*Modern Barber Col.* v. *Cal. Emp. Stab. Com., supra,* 31 Cal.2d 720, 726.) "Any delay in the proceedings of the officers, upon whom the duty is devolved of collecting the taxes, may derange the operations of government, and thereby cause serious detriment to the public." (*Dows* v. *City of Chicago* (1871) 78 U.S. (11 Wall.) 108, 110 [20 L.Ed. 65, 66]; accord, *Bob Jones University* v. *Simon, supra,* 416 U.S. 725, 736 [40 L.Ed.2d 496, 509]; *Cheatham et al.* v. *United States* (1875) 92 U.S. 85, 88-89 [23 L.Ed. 561, 562-563].)

---

[8]The federal courts have reached a similar conclusion in regard to the congressional "anti-injunction" statute comparable to section 32. (26 U.S.C. § 7421.) Early cases treated requests by taxpayers for judicial intervention under the traditional equity tests. (*Miller* v. *Nut Margarine Co., supra,* 284 U.S. 498, 509 [76 L.Ed. 422, 429-430]; *Allen* v. *Regents* (1938) 304 U.S. 439, 449 [82 L.Ed. 1448, 1456-1457, 58 S.Ct. 890].) This approach has been specifically disapproved, however, in more recent cases. Under present law, a taxpayer can resort to injunctive relief only if it is clear that "under no circumstances" can the government prevail. (*Enochs* v. *Williams Packing Co.* (1962) 370 U.S. 1, 7 [8 L.Ed.2d 292, 296-297, 82 S.Ct. 1125]; accord, *Bob Jones University* v. *Simon* (1974) 416 U.S. 725, 737 [40 L.Ed.2d 496, 509, 94 S.Ct. 2038]; *Knoefler* v. *Schneider* (9th Cir. 1977) 565 F.2d 1072, 1073.)

To implement this policy, a specific statutory refund procedure has been provided for taxpayers whose property has been improperly assessed. (Rev. & Tax. Code, §§ 5096, 5140.) And to compensate a taxpayer who has been wrongfully required to pay, interest will be awarded on the refunded money. (*Id.*, § 5150.) The utilities have attempted to circumvent this statutory scheme in an effort to obtain adjudication of their claims before payment.

We hold that section 32 means what it says. Nothing in the policy underlying the section, its history, or the cases construing it, would support an exception on the ground here claimed.[9] Thus the present action is barred by section 32, and the trial court erred in failing to sustain the demurrer on this ground.

The judgment is reversed with directions to dismiss the action. Respondent shall recover its costs on appeal.

Bird, C. J., Clark, J., Richardson, J., Manuel, J., Newman, J., and White, J.,* concurred.

Appellants' petition for a rehearing was denied July 9, 1980, and the judgment was modified to read as printed above. Tobriner, J., did not participate therein.

---

[9]If we were to hold that the hardship of filing refund applications in multiple counties was a ground for ignoring section 32, we would then be required to decide if only PG&E, which owns property in 50 counties, could take advantage of the new exception, or whether San Diego Gas and Electric, which owns property in but 3 counties, could do so also.

*Assigned by the Chairperson of the Judicial Council.