[L.A. No. 32140. Dec. 17, 1987.]

WESTERN OIL AND GAS ASSOCIATION et al., Plaintiffs and Respondents, v.
STATE BOARD OF EQUALIZATION, Defendant and Appellant.

210

---

**COUNSEL**

John K. Van de Kamp, Attorney General, Arthur C. de Goede, Assistant Attorney General, and Philip C. Griffin, Deputy Attorney General, for Defendant and Appellant.

Hanna & Morton, Edward S. Renwick and J. Nile Kinney for Plaintiffs and Respondents.

OPINION

ARGUELLES, J.—An oil industry association, and seven oil companies operating intercounty pipelines in this state, brought suit to prevent the State Board of Equalization (Board) from requiring the companies to furnish information concerning the land and rights of way on which the pipelines are located. The trial court granted the relief requested, ruling that the Board had no legitimate need for the information because it lacked jurisdiction to assess these property interests. The Court of Appeal agreed with this reasoning, and affirmed. "Although seemingly a dispute as to whether [the Board] in the exercise of its authority to assess pipelines may require [the oil companies] to produce information concerning the lands and rights of way on which the pipelines are located, the real point on which resolution of this appeal truly revolves is framed by the question: 'Does the constitutional requirement that [the Board] shall assess inter-county pipelines give [the Board] the power to assess lands and rights of way on which the pipelines are located?' We hold that it does not and conclude that the trial court did not err." We disagree with this framing of the critical question and, finding that the trial court should not have granted the relief requested, reverse.

I

Article XIII, section 19, of the California Constitution, enacted in substantially the same form in 1933 as article XIII, section 14, requires the Board "annually [to] assess . . . pipelines . . . lying within 2 or more counties . . . ." From 1933 to 1936, the Board's instructions to pipeline owners and operators required the listing of lands and rights of way in the reporting of pipeline property subject to assessment by the Board. From 1936 to 1982, they did not.

In January 1936, we issued a detailed definition of "pipeline" for the purposes of the original constitutional provision: "The line of pipe, together with couplings, collars, valves and fittings, with protection covers; the structures supporting or encasing the pipe, above or below ground or under water; the pumps, boilers, engines, motors, manifolds, intakes, header station, control valves and auxiliary equipment attached to and connected therewith and necessary to the operation of the said major station units, receiving, shipping, flow, balance and surge tanks, together with the suction from leased storage tanks, to, by and through pumping stations, when such pumps, tanks and so forth are essential and part of and necessary to the use and operation of the pipe line." (*Pipe Line Co.* v. *State Bd. of Equalization* (1936) 5 Cal.2d 253, 256-257 [54 P.2d 18].) This definition neither expressly

included nor expressly excluded land and rights of way, and the proper treatment of such interests was not discussed in the opinion.

Apparently taking the view that the decision at least implicitly excluded lands and rights of way from the definition of a pipeline, however, the Board modified its instructions to delete the requirement the pipeline owners and operators furnish information on such interests. This practice continued unabated for 46 years.

In January 1982, the Board, relying on a new interpretation by its legal staff, adopted a policy statement asserting a right to assess lands and rights of way underlying intercounty pipelines. To implement this policy, the Board proposed a method of identifying such interests in land by locating pipelines on tax code area maps and summarizing the information on reporting forms.

The companies filed suit to prevent the Board from taking any steps to compel them to provide this information.[1] Over the Board's objections that the relief sought was barred by the constitutional prohibition against enjoining the collection of any tax (Cal. Const., art. XIII, § 32) and that the companies were required first to exhaust their administrative remedies by paying any assessed taxes and applying for a refund, the trial court determined that the Board had no authority to assess lands and rights of way underlying pipelines and thus no legitimate need for the information. Accordingly, the trial court overruled the Board's demurrer to the complaint, and granted the companies' request for a writ of mandate, permanent injunction and declaratory relief barring the Board from compelling submission of information on lands and rights of way. The Court of Appeal, agreeing that the critical question was whether the Board had authority to assess these interests in land, affirmed.

## II

The dispositive question in this case is not whether the Board has authority to assess lands and rights of way pursuant to its constitutional

[1] In many instances, the validity of a Board demand for information could be tested by moving to quash any subpoena issued under Government Code section 15613. In the circumstances of this case, however, the Board had no need to issue a subpoena for the information it sought. It chose to implement its change in policy by requiring the companies to submit the information in their annual property statements (see Rev. & Tax. Code, §§ 826, 827), thereby subjecting the companies to the risk of substantial penalty assessments under Revenue and Taxation Code section 830, subdivision (a), if they failed to comply. The Board has never argued that the companies could only proceed by challenging a subpoena, and the question at issue—the propriety of a prepayment challenge to a demand for information—would be equally applicable to a proceeding contesting a Board subpoena as to the mandate proceeding pursued here.

duty to assess intercounty pipelines, but whether the trial court had jurisdiction to bar the Board from requiring pipeline owners and operators to submit information on such property interests. The Board contends that the relief granted by the trial court is barred by California Constitution, article XIII, section 32: "No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature."[2] We agree that the constitutional provision precludes the prepayment relief sought by the companies in this case, but we reject the Board's contention that the provision bars *all* prepayment challenges to the Board's authority.

The trial court found section 32 of article XIII inapplicable in this case, reasoning that the companies were not seeking to prevent assessment but only to prevent being compelled to furnish certain information. This reasoning is flawed. ■ Section 32 broadly limits in the first instance the power of the courts to intervene in tax collection matters; it does not merely make unavailable a particular remedy or preclude actions challenging the ultimate validity of a tax assessment. (See *Pacific Gas & Electric Co.* v. *State Bd. of Equalization* (1980) 27 Cal.3d 277, 282-283 [165 Cal.Rptr. 122, 611 P.2d 463].) The section applies if the prepayment judicial determination sought would impede tax collection. (*State Bd. of Equalization* v. *Superior Court* (1985) 39 Cal.3d 633, 640 [217 Cal.Rptr. 238, 703 P.2d 1131]; *Pacific Gas & Electric Co., supra,* 27 Cal.3d at p. 280; *Modern Barber Col.* v. *Cal. Emp. Stab. Com.* (1948) 31 Cal.2d 720, 723 [192 P.2d 916].) That an action turns on a challenge to the Board's demands for information does not alone lift the constitutional bar. (*People* ex rel. *Franchise Tax Bd.* v. *Superior Court* (1985) 164 Cal.App.3d 526, 545 [210 Cal.Rptr. 695].)

■ Although article XIII, section 32 applies here because the Board's demands for information are the first step in the assessment and collection of taxes, prior cases establish that limited judicial intervention is nonetheless permissible in some circumstances. The ban on prepayment judicial review found in the state Constitution must yield, of course, to the requirements of the federal Constitution (*Dupuy* v. *Superior Court* (1975) 15 Cal.3d 410, 418 [124 Cal.Rptr. 900, 541 P.2d 540]), and the superior court

[2] The Board also relies on the statutory prohibition against prepayment judicial relief in tax matters: "No injunction or writ of mandate or other legal or equitable process shall issue in any suit, action or proceeding in any court against this State or against any officer of this State to prevent or enjoin the assessment or collection of any tax under this part . . . ." (Rev. & Tax. Code, § 19081.) In the circumstances of this case, our discussion of the constitutional bar to prepayment relief applies with equal force to the statutory proscription.

has jurisdiction to determine whether the Board's inquiry offends the prohibition against unreasonable searches and seizures or violates the right of privacy or the privilege against self-incrimination. (*People* ex rel. *Franchise Tax Bd., supra,* 164 Cal.App.3d at p. 540.)

■ The court's inquiry must necessarily be limited, however, to avoid undue interference with the collection of taxes. The Board may compel the disclosure of information if: (1) its inquiry is authorized; (2) the requests are specific; and (3) the information sought is reasonably relevant to the inquiry. (*Brovelli* v. *Superior Court* (1961) 56 Cal.2d 524, 529 [15 Cal.Rptr. 630, 364 P.2d 462]; see also *United States* v. *Morton Salt Co.* (1950) 338 U.S. 632, 651-654 [94 L.Ed. 401, 415-417, 70 S.Ct. 357].) The role of the court in assessing the propriety of a prepayment challenge to a Board request for information is not to determine the ultimate validity of the assessment to which the Board's inquiry is directed; the exclusive remedy for that relief is the suit for refund after payment. (*State Bd. of Equalization, supra,* 39 Cal.3d at p. 638.) The court at this preliminary stage may only examine the Board's authority to undertake the inquiry.

■ We find the appropriate standard for judicial intervention to be that invoked under the similar anti-injunction statute for federal tax matters[3] and hold that prepayment relief must be limited to those situations in which it is clear that " 'under no circumstances' can the government prevail." (*Pacific Gas & Electric Co., supra,* 27 Cal.3d at p. 283, fn. 8 [citing *Enochs* v. *Williams Packing Co.* (1962) 370 U.S. 1, 7 (8 L.Ed.2d 292, 82 S.Ct. 1125)].) "Only if it is . . . apparent that, under the most liberal view of the law and the facts, the [government] cannot establish its claim, may the suit for an injunction be maintained." (*Enochs, supra,* 370 U.S. at p. 7.) Put another way, if the Board has no conceivable basis in law or fact for assessing a tax on a given piece of property, then it cannot constitutionally demand information from a taxpayer that would be relevant only to such a tax.

■ Applying this standard, we hold that the trial court erred in granting the relief requested and barring the Board from demanding information on lands and rights of way used by pipeline owners and operators. We do *not* hold that the Board has the authority to assess those interests in land. That question can only be determined in an appropriate action for refund.[4]

---

[3] The federal statute (26 U.S.C. § 7421) provides, in pertinent part: "[N]o suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person . . . ."

[4] The circumstances of the present matter underscore the lack of need for the searching review of the merits urged on us by the companies. Although deprived of the information it

Our 1936 decision in *Pipe Line Co., supra,* 5 Cal.2d 253, did not expressly exclude lands and rights of way from the definition of pipelines subject to assessment by the Board, however, and does not bar the Board from now asserting jurisdiction to assess such interests. The Board's 46 years of apparent acquiescence in an interpretation that did not include lands and rights of way may be ground for questioning its present course, but we are not prepared to rule its present interpretation so devoid of merit or so lacking a basis in law and fact that "under no circumstances" could the Board prevail. (See Rev. & Tax. Code, § 861 et seq.; cf. *Bauer-Schweitzer Malting Co. v. City and County of San Francisco* (1973) 8 Cal.3d 942, 944-945 [106 Cal.Rptr. 643, 506 P.2d 1019].)

The judgment of the Court of Appeal is reversed, and the Court of Appeal is directed to remand the matter to the superior court for further proceedings consistent with this opinion.

Lucas, C. J., Mosk, J., Broussard, J., Panelli, J., Eagleson, J. and Kaufman, J., concurred.

Respondents' petition for a rehearing was denied March 10, 1987, and the opinion was modified to read as printed above. Lucas, C. J., Eagleson, J., and Kaufman, J., were of the opinion that the petition should be granted.

---

sought, the Board made the assessments that lie at the heart of this dispute and denied the companies' requests for reassessment. The companies are free to pursue their judicial remedies, and nothing herein should be deemed an expression of opinion on the proper outcome of any litigation arising from the assessments. We have decided only that the trial court and Court of Appeal erred in their expansive view of a court's jurisdiction to entertain a prepayment challenge to a Board request for information. The present availability of a refund action neither moots this question nor obviates the need for us to stress the limited nature of the role played by prepayment judicial intervention in tax matters.