[No. B042653. Second Dist., Div. Two. Aug. 9, 1989.]

FRANCHISE TAX BOARD, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
BOBBY L. BONDS et al., Real Parties in Interest.

**COUNSEL**

John K. Van de Kamp, Attorney General, Edmond B. Mamer and Richard E. Nielsen, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Roderic M. Wright for Real Parties in Interest.

**OPINION**

**FUKUTO, J.—**

I.

The Franchise Tax Board petitions for a writ of prohibition commanding the trial court to sustain its demurrer to a taxpayer's Complaint for Determination of nonresidency. The filing of such a complaint is expressly authorized by Revenue and Taxation Code section 19081 and Code of Civil Procedure section 1060.5. The Franchise Tax Board contends these provisions violate article XIII, section 32 of the California Constitution, which prohibits the issuance of legal process to prevent or enjoin collection of any tax. The text of these enactments is set out in the margin.[1]

---

[1] Revenue and Taxation Code section 19081 provides: "No injunction or writ of mandate or other legal or equitable process shall issue in any suit, action, or proceeding in any court against this State or against any officer of this State to prevent or enjoin the assessment or collection of any tax under this part; provided, however, that any individual after protesting a notice or notices of deficiency assessment issued because of his alleged residence in this State and after appealing from the action of the Franchise Tax Board to the State Board of Equalization, may within 60 days after the action of the State Board of Equalization becomes final commence an action, on the grounds set forth in his protest, in the Superior Court [in Sacramento, Los Angeles, or San Francisco] to determine the fact of his residence in this State during the year or years set forth in the notice or notices of deficiency assessment. No tax under this part based solely upon the residence of such an individual shall be collected from such individual until 60 days after the action of the State Board of Equalization becomes final and, if

Whether these statutes authorize judicial action that violates the constitutional ban on enjoining collection of taxes is a question of first impression. Two decisions of the Courts of Appeal in 1985 and 1986, reaching conflicting results, were both ordered depublished by the Supreme Court. Two reported appellate cases considered the taxpayer's residency suit on the merits, without mention of the constitutional prohibition. (*Klemp* v. *Franchise Tax Bd.* (1975) 45 Cal.App.3d 870 [119 Cal.Rptr. 821]; *Whittell* v. *Franchise Tax Bd.* (1964) 231 Cal.App.2d 278 [41 Cal.Rptr. 673].)

Despite the unusual posture of a constitutional case in which the Attorney General attacks a state statute, relegating its defense to two individuals who claim not to be residents, the proceeding is not collusive, and the taxpayers have defended the statute with vigor and skill.

## II.

According to the complaint, in 1981 the Franchise Tax Board issued the taxpayers notices of additional tax it proposed to assess for tax years 1978 and 1979. The taxpayers filed a written protest, claiming to have been residents of Texas or Illinois in those years. In November 1981, after the Franchise Tax Board rejected their protest, the taxpayers appealed to the State Board of Equalization, which, seven years later, affirmed the determination of the Franchise Tax Board.

The taxpayers then filed a superior court complaint for a determination that they were not residents of California in 1978 and 1979. The Franchise Tax Board demurred on the ground the action is barred by the antiinjunction provision of article XIII, section 32 of the Constitution. The demurrer was overruled, and this petition followed.

## III.

Code of Civil Procedure section 1060.5 and Revenue and Taxation Code section 19081 authorize a taxpayer who claims to be a nonresident to

---

he commences an action pursuant to this section, during the pendency of such action, other than by way of or under the jeopardy assessment provisions of this part."

Code of Civil Procedure section 1060.5 provides: "Any individual claiming to be a nonresident of the State of California for the purposes of the Personal Income Tax Law may commence an action in the Superior Court [in Sacramento, Los Angeles, or San Francisco] against the Franchise Tax Board to determine the fact of his residence in this State under the conditions and circumstances set forth in Section 19081 of the Revenue and Taxation Code."

Constitution, article XIII, section 32 provides: "No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature."

litigate that one fact, and the latter statute postpones collection of the disputed tax until completion of the litigation. ■ The Franchise Tax Board contends these statutes violate the anti-injunction provision of the Constitution.

■ Every statute is clothed with a presumption of constitutionality (*County of Sonoma* v. *State Energy Resources Conservation etc. Com.* (1985) 40 Cal.3d 361, 368 [220 Cal.Rptr. 114, 708 P.2d 693]), and must be upheld unless it is "clearly, positively and unmistakably" unconstitutional. (*Lockheed Aircraft Corp.* v. *Superior Court* (1946) 28 Cal.2d 481, 484 [171 P.2d 21, 166 A.L.R. 701].) ■ The power of the Legislature in the area of taxation is paramount, and any constitutional restriction on that power must be strictly construed against the limitation. (E.g., *Hibernia Bank* v. *State Bd. of Equalization* (1985) 166 Cal.App.3d 393, 401 [212 Cal.Rptr. 556].) ■ Constitutional provisions must be construed with reference to their underlying purpose. (E.g., *Massachusetts Mutual Life Ins. Co.* v. *City and County of San Francisco* (1982) 129 Cal.App.3d 876, 880-881 [181 Cal.Rptr. 370].) We examine the constitutional anti-injunction provision with these principles in mind.

■ Article XIII, section 32 prohibits only issuance of "legal or equitable process . . . in any proceeding in any court" to prevent or enjoin collection of a tax. Here, however, collection of the tax is postponed by the statute, not the court. ("No tax under this part based solely upon the residence of such an individual shall be collected from such individual until 60 days after the action of the State Board of Equalization becomes final and, if he commences an action pursuant to this section, during the pendency of such action . . . ." Rev. & Tax. Code, § 19081.) The statutes do not authorize the superior court to prevent or enjoin collection of the tax, but permit it only "to determine the fact of [the taxpayer's] residence in this State during the year or years set forth in the notice or notices of deficiency assessment." (*Ibid.*) Enactment of a tax statute that postpones collection of a tax until a specified time simply does not implicate the constitutional anti-injunction principle.

We recognize, of course, that a taxpayer may not circumvent constitutional or statutory restraints on prepayment tax litigation by asking only for declaratory relief. (See, e.g., *Pacific Gas & Electric Co.* v. *State Bd. of Equalization* (1980) 27 Cal.3d 277, 280 [165 Cal.Rptr. 122, 611 P.2d 463].) And, unless the Franchise Tax Board also contends the taxpayer owes tax on income from sources within California (see Rev. & Tax. Code, § 17951), a nonresidency determination in the taxpayer's favor may amount to the end of the deficiency assessment. This seems, however, to present no constitutional problem. During the litigation, it is only the tax statute, not the

court, that prevents the collection of the disputed tax. When the litigation concludes, the board can scarcely complain if the court enters a declaratory judgment of nonresidency which as a practical matter prevents it from thereafter requiring the taxpayer to pay and sue for refund. ▮ At that point any further assertion that tax must be paid would be frivolous, and judicial relief therefore not barred by article XIII, section 32. (*Western Oil & Gas Assn.* v. *State Bd. of Equalization* (1987) 44 Cal.3d 208, 213-214 [242 Cal.Rptr. 334, 745 P.2d 1360]; see *Union Pacific R.R. Co.* v. *State Bd. of Equalization* (1989) 49 Cal.3d 138, 155-157.)

▮ Thus we must distinguish the cases on which the Franchise Tax Board relies; none involved a tax statute which authorizes prepayment litigation and postpones collection while it is pending. (See *State Bd. of Equalization* v. *Superior Court* (1985) 39 Cal.3d 633 [217 Cal.Rptr. 238, 703 P.2d 1131] (sales and use taxes); *Pacific Gas & Electric Co.* v. *State Bd. of Equalization* (1980) 27 Cal.3d 277 [165 Cal.Rptr. 122, 611 P.2d 463] (assessment of real property values); *Aronoff* v. *Franchise Tax Bd.* (1963) 60 Cal.2d 177 [32 Cal.Rptr. 1, 383 P.2d 409] (dispute over disallowed itemized deductions from gross income); *Modern Barber Col.* v. *Cal. Emp. Stab. Com.* (1948) 31 Cal.2d 720 [192 P.2d 916] (unemployment insurance contributions); *Hunter-Reay* v. *Franchise Tax Board.* (1983) 140 Cal.App.3d 875 [189 Cal.Rptr. 810] (collection of taxes under jeopardy assessment); *Helms Bakeries* v. *St. Bd. Equalization* (1942) 53 Cal.App.2d 417 (sales and use taxes); cf. *People* ex rel. *Franchise Tax Bd.* v. *Superior Court* (1985) 164 Cal.App.3d 526, 543 [210 Cal.Rptr. 695] (enforcement of administrative subpoenas).)

We find no controlling significance in the second sentence of the constitutional provision, which states, "After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature." This provision, which dates from 1910, contains no words connoting exclusivity, and appears to authorize legislation ameliorating certain stringent rules that impeded tax refund litigation. (See *Brumagim* v. *Tillinghast* (1861) 18 Cal. 265, 270-275; *Warren* v. *City and County* (1907) 150 Cal. 167, 170 [88 P. 712]; *Westinghouse Electric Co.* v. *Chambers* (1915) 169 Cal. 131 [145 P. 1025]; *Third & Broadway B. Co.* v. *Los Angeles Co.* (1934) 220 Cal. 660, 665-666 [32 P.2d 377].)

Our conclusion is not inconsistent with the underlying purpose of the anti-injunction provision. Article XIII, section 32 embodies and restates the public policy that revenue collection continue unimpeded by tax litigation. (See, e.g., *State Bd. of Equalization* v. *Superior Court, supra,* 39 Cal.3d 633, 638.) This policy is not thwarted by residency litigation where the state has,

by legislation, itself authorized, directed, and consented to the postponement of collection pending the litigation. The statute accommodates the state's need for immediate collection of jeopardy assessments. The Franchise Tax Board admits that the question of prepayment residency litigation has arisen rarely in recent years, and the statutes it seeks to condemn here have lived in peaceful coexistence with the Constitution throughout the 34 years since their enactment.

Nor can we blind ourselves to the fact that collection in this particular case was postponed seven years while the State Board of Equalization mulled over the taxpayers' administrative appeal. Residency litigation in superior court should proceed more quickly; it is not complex and is given a preference on the trial calendar. (See Code Civ. Proc., § 1062.3.)

If the Franchise Tax Board considers prepayment residency litigation an undue burden on tax collection, or if, despite past experience, it should become besieged by groundless dilatory suits by resident taxpayers, it should ask the Legislature to repeal or amend the statutes that authorize such litigation.

We conclude that the superior court action authorized by Revenue and Taxation Code section 19081 and Code of Civil Procedure section 1060.5 entails no unconstitutional issuance of court process to prevent or enjoin collection of a tax.

## IV.

It is thus unnecessary to evaluate the taxpayers' contention that to require a nonresident to pay California personal income tax and sue for a refund is an unconstitutional deprivation of property without due process of law. (See *Miller Bros. Co.* v. *Maryland* (1954) 347 U.S. 340 [98 L.Ed .744, 74 S.Ct. 535].) ■ We merely note the settled rule that the due process clause does not require a judicial determination of tax liability before a tax can be collected, if a precollection administrative hearing is afforded. (*Dupuy* v. *Superior Court* (1975) 15 Cal.3d 410, 416 [124 Cal.Rptr. 900, 541 P.2d 540]; *Aronoff* v. *Franchise Tax Board, supra,* 60 Cal.2d 177.)

■ Finally, close inspection of the taxpayers' complaint shows that it demands not only a determination of nonresidency, but also a "judgment against the Franchise Tax Board dismissing the Deficiency Assessments." This portion of the prayer cannot be granted, as it requests relief not authorized by Revenue and Taxation Code section 19081 and Code of Civil Procedure section 1060.5.

The order to show cause is discharged, and the petition for writ of prohibition is denied.

Compton, Acting P. J., and Gates, J., concurred.

Petitioner's application for review by the Supreme Court was denied October 26, 1989. Mosk, J., and Broussard, J., were of the opinion that the application should be granted.