[No. F011090. Fifth Dist. Feb. 27, 1990.]

MERCED COUNTY TAXPAYERS' ASSOCIATION et al., Plaintiffs and Respondents, v.
DAVID A. CARDELLA, as Assessor, etc., Defendant and Appellant.

[No. F012134. Fifth Dist. Feb. 27, 1990.]

MERCED COUNTY TAXPAYERS' ASSOCIATION et al., Plaintiffs and Respondents, v.
COUNTY OF MERCED et al., Defendants and Appellants.

**COUNSEL**

Flanagan, Mason, Robbins, Gnass & Corman and William E. Gnass for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Robert F. Tyler and Robert D. Milam, Deputy Attorneys General, as Amici Curiae on behalf of Defendants and Appellants.

Jerome N. Field for Plaintiffs and Respondents.

OPINION

FRANSON, P. J.—

STATEMENT OF THE CASE

Plaintiffs and respondents, Merced County Taxpayers' Association and eight individual Merced County taxpayers (Taxpayers), filed a petition for writ of mandate on August 3, 1978, alleging the 1977-1978 reappraisal plan for certain parcels of Merced County property resulted in discriminatory tax treatment. The petition sought an order commanding Merced County (County), David Cardella as the Merced County Assessor (Assessor), and the Merced County Board of Supervisors to take remedial action to correct the alleged inequality.

Following the reassessment of Merced County property to the 1975-1976 base year value pursuant to California Constitution article XIII A (Prop. 13), the Taxpayers filed an amended petition on March 18, 1979. This petition alleged the property in question had been retroactively reassessed, and, consequently, the assessment inequality had been increased further.

The petition was amended several more times. The amended petition filed April 30, 1982, specifically alleged the Assessor violated Revenue and Taxation Code, section 110.1[1] in determining the new 1975 lien date base year values. The final amendment was filed November 2, 1982.

The Taxpayers sought an order commanding the Assessor to correct the prior assessments. However, the Taxpayers disclaimed any right to tax refunds. Rather, the Taxpayers claimed to be seeking "correction of wholesale assessment irregularities for application in the future only."

The trial court ruled in favor of the Taxpayers, finding the Assessor improperly assessed the "1975 March 1 tax base value for Proposition 13 and that [the Taxpayers] had no other plain, speedy adequate remedy in the ordinary course of law, or otherwise than by this proceeding commenced by [the Taxpayers]." Because it had been 13 years since the March 1, 1975, lien date, the trial court determined there was no practical way for the Assessor to properly reassess the property. Thus, the court ordered the original 1975 assessment roll be reinstated, adjusted by the annual inflation factor authorized by article XIII A. Only the Assessor appealed this ruling.

---

[1] All statutory references are to the Revenue and Taxation Code unless otherwise indicated.

The trial court awarded the Taxpayers attorney's fees under Code of Civil Procedure section 1021.5 and costs. The trial court multiplied the actual fees incurred by 2 for a total of $1,201,352 payable by the County directly to the Taxpayers' attorney. The County has appealed this ruling. Upon the Taxpayers' motion, this court consolidated the two appeals. The Taxpayers have requested this court take judicial notice of certain documents pertaining to legislative intent. We grant the request. (Evid. Code, § 452.)

## STATEMENT OF FACTS

Before Proposition 13 was passed on June 6, 1978, the Assessor did not reappraise every parcel of real property in the county each year for purposes of ad valorem property taxes. Rather, the goal was to reappraise a parcel every five years. Between these periodic appraisals, interim adjustments to the roll values were made. However, these interim adjustments were not intended to bring the roll value up to the market value.

Proposition 13, which added article XIII A to the California Constitution, limited ad valorem real property taxes to 1 percent of the 1975-1976 appraised value of the property. Nevertheless, county assessors were permitted to reassess property not already assessed up to the 1975-1976 value to reflect that valuation. (Cal. Const., art. XIII A, § 2.) Due to the periodic appraisal system in effect in Merced County, only about 20 percent of the parcels had been reappraised for the 1975-1976 tax roll. The balance of the property had been reappraised either before or after the 1975-1976 lien date.

To arrive at a 1975 full cash value for property not reappraised in 1975, the Assessor used the most recent appraisal of the property and created a 1975 value by multiplying this appraised value by a particular factor. The "factor" was calculated by first dividing the county into "neighborhoods," i.e., groups of similar properties which had been reappraised during the same year. Sales occurring in each neighborhood between January 1974 and May 1975 were then compared to later appraisals of the same properties. Thus, if a property sold during 1974-1975 and was then reappraised in 1977, for example, that 1974 or 1975 sales price was divided by the 1977 appraised value to arrive at a ratio. The Assessor averaged the available ratios for the neighborhood to arrive at that neighborhood's factor. This factor was then multiplied by the appraised value for each parcel in the neighborhood which was subject to reappraisal to arrive at that parcel's 1975 base value. The parties referred to this appraisal method as "backcasting." The Taxpayers' objection to this "backcasting" method was that it used post-1975 appraisals.

DISCUSSION

I. *The mandamus relief was not properly granted.*

The trial court found that because the Taxpayers disclaimed any right to tax refunds through this action, they were not seeking to prevent or enjoin the collection of property taxes. Rather, the Taxpayers were seeking to correct assessment irregularities for application in the future. Further, due to the nature of the relief sought, the Taxpayers had no adequate remedy at law. Consequently, the court held mandamus was a proper remedy. The Assessor contends mandamus relief was improper for two reasons: (1) Section 4807 prohibits such relief; and (2) the Taxpayers failed to exhaust their administrative remedies.

Section 4807 provides: "No injunction or writ of mandate or other legal or equitable process shall issue in any suit, action, or proceeding in any court against any county, municipality, or district, or any officer thereof, to prevent or enjoin the collection of property taxes sought to be collected."

The Legislature passed section 4807 to conform with California Constitution, article XIII, section 32 which provides that " 'No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax.' " (*McKendry* v. *County of Kern* (1986) 180 Cal.App.3d 1165, 1168 [226 Cal.Rptr. 45].) The language used in each of these provisions is nearly identical, and the policy behind both of them is the same: to allow revenue collection to continue during litigation so that essential public services dependent on the funds are not unnecessarily interrupted. (*Id.* at p. 1169.) Thus, cases involving the application of California Constitution, article XIII, section 32 are relevant to the resolution of this case.

In *Pacific Gas & Electric Co.* v. *State Bd. of Equalization* (1980) 27 Cal.3d 277 [165 Cal.Rptr. 122, 611 P.2d 463], the taxpayers filed an action for mandamus and declaratory relief to compel the State Board of Equalization to adjust the assessment of their real property to its 1975-1976 value in accordance with California Constitution, article XIII A. The California Supreme Court held the action was barred by article XIII, section 32. The court explained that "the assessment of real property is an integral part of the taxing process, and a court order invalidating an assessment will in effect 'prevent or enjoin the collection' of the tax." A taxpayer may not circumvent restraints on prepayment tax litigation by seeking only declaratory relief. (*Id.* at p. 280.)

In *Western Oil & Gas Assn.* v. *State Bd. of Equalization* (1987) 44 Cal.3d 208 [242 Cal.Rptr. 334, 745 P.2d 1360], the taxpayers brought suit to

prevent the State Board of Equalization from requiring them to furnish information concerning land and rights-of-way which the board sought to assess. The trial court held that article XIII, section 32 was inapplicable, reasoning that the taxpayers were not seeking to prevent assessment but only to prevent being compelled to furnish certain information. The Supreme Court found this reasoning flawed and reversed. The court held that article XIII, section 32 broadly limits in the first instance the power of the courts to intervene in tax collection matters; it does not merely make unavailable a particular remedy or preclude actions challenging the ultimate validity of a tax assessment. (*Id.* at p. 213.) "The section applies if the prepayment judicial determination sought would impede tax collection." (*Ibid.*) The court found section 32 was applicable in this case because the demand for information was the first step in the assessment and collection of taxes. (*Ibid.*)

■ Here, the Taxpayers sought an assessment adjustment. The petition alleged the retroactive reassessments were too high. Under *Pacific Gas & Electric Co.* v. *State Bd. of Equalization, supra,* 27 Cal.3d 277, 280, a court does not have authority to issue an order invalidating an assessment since such an order would in effect "prevent or enjoin the collection" of the tax. The Taxpayers argue that this rule is not applicable here because they disclaimed any right to a tax refund. According to the Taxpayers, the requested assessment adjustments could not "impede tax collection" because they were limited to future assessments. Nevertheless, by seeking to lower their assessments, the Taxpayers were seeking to avoid the future payment of taxes. Thus, despite the disclaimer, the Taxpayers were pursuing prepayment relief. The application of section 4807 should not depend on such a procedural fortuity. It would open a loophole in the ban on prepayment suits to permit such a suit whenever the taxpayer opted to disclaim the right to a refund of past overpayments. (Cf. *Calfarm Ins. Co.* v. *Deukmejian* (1989) 48 Cal.3d 805, 839-840 [258 Cal.Rptr. 161, 771 P.2d 1247].)

We hold that section 4807 bars mandamus relief in this action. Accordingly, we need not discuss the Assessor's contention that Taxpayers failed to exhaust their administrative remedies or that the trial court erred in interpreting section 110.1 and in invalidating the March 1, 1975, assessment.

We turn now to the award of attorney's fees.

II. *The attorney's fees and costs award must be reversed.*

The trial court awarded attorney's fees and costs to the Taxpayers. As noted above, this judgment was appealed separately by the County. The attorney's fees were granted under Code of Civil Procedure section 1021.5.

That section provides a court may award attorney's fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest. The County contends Code of Civil Procedure section 1021.5 is not applicable in this case. Alternatively, the County argues that even if fees were proper, the court's award of $1,201,352 was unreasonably high. However, the reversal of the judgment on the petition for writ of mandate renders these issues moot.

The costs to which a prevailing party are entitled include attorney's fees authorized by statute. (Code Civ. Proc., § 1033.5.) An order awarding costs falls with a reversal of the judgment on which it is based. (*Purdy* v. *Johnson* (1929) 100 Cal.App. 416, 421 [280 P. 181].) Thus, the judgment awarding attorney's fees and costs must also be reversed.

The judgment on the writ of mandate and the judgment awarding costs and attorney's fees are reversed. Appellants to recover their costs on appeal.

Best, J., and Ardaiz, J., concurred.

A petition for a rehearing was denied March 29, 1990, and respondents' petition for review by the Supreme Court was denied May 16, 1990.