Opinion
 

 CROSKEY, J.
 

 In this case of first impression, we hold that litigation expenses awarded to a taxpayer under Revenue and Taxation Code section 7156
 
 [1]
 
 are not subject to an offset by the state under Government Code
 
 *203
 
 sections 12419.4
 
 [2]
 
 and 12419.5
 
 [3]
 
 against taxes owed, or claimed to be owed, by the taxpayer. We conclude that a contrary rule would effectively nullify section 7156 and would thereby undermine an important mechanism for the enforcement of the citizen protections created by the Harris-Katz California Taxpayers’ Bill of Rights. (§ 7080 et seq.; hereafter the Taxpayers’ Bill of Rights.)
 
 [4]
 

 The People of the State of California, by and through the State Board of Equalization (hereafter the Board) appeal from a judgment of the trial court by which the court (1) found the Board had improperly offset against an alleged underlying tax liability $32,464.97 in litigation costs, including attorney fees, which were awarded pursuant to section 7156 in a related action (People ex rel. State Bd. of Equalization v. Garg (Super. Ct. L.A. County, 1994, No. BC003842)) to plaintiffs Anand G. Garg, Hira L. Khanna and the partnership of Garg and Khanna (hereafter, collectively Garg); (2) found Garg to be entitled to an exemption from the claimed tax
 
 [5]
 
 ; and (3) ordered the Board to pay the fee award plus interest to Garg by way of a refund.
 

 
 *204
 
 This is the third time the dispute between the Board and Garg has come before this court. In
 
 People
 
 v.
 
 Garg
 
 (1993) 16 Cal.App.4th 357 [20 Cal.Rptr.2d 80]
 
 (Garg I),
 
 the Board appealed from a judgment finding that the Board’s action to collect allegedly delinquent taxes from Garg was barred by the statute of limitations in section 6711. (16 Cal.App.4th at p. 359.) This court affirmed, holding that the Board’s interpretation of section 6711 “[did] not appear to be a reasonable reading of the statute.” (16 Cal.App.4th at pp. 363-364.)
 
 [6]
 
 Thereafter, in an unpublished opinion, we affirmed the trial court’s award of litigation costs to Garg under section 7156.
 
 (People
 
 v.
 
 Garg
 
 (Aug. 9, 1996) B089773
 
 (Garg II).)
 

 On May 24, 1994, after the issuance of our opinion in
 
 Garg I,
 
 Garg filed the within action to compel payment of the litigation costs previously ordered by the court and to prohibit the Board from setting off the award against the disputed tax. The trial court deemed the action to be, in effect, an action for a tax refund. After receiving evidence on the merits of the Board’s claim, the court found Garg exempt from the tax and entered judgment accordingly. In this, the trial court erred. It lacked jurisdiction to consider or determine the merits of the disputed tax claim. Nevertheless, we affirm the judgment because we conclude that the litiga tion costs awarded to Garg under section 7156 were not property which was subject to setoff under Goverment Code sections 12419.4 and 12419.5.
 
 [7]
 

 
 *205
 
 Factual and Procedural Background
 
 [8]
 

 On December 31, 1980, Garg, a resident of Ohio, purchased an aircraft from a California vendor in a sale and lease-back transaction. Garg gave the seller a sales tax exemption certificate, indicating the purchase was exempt. By a letter dated April 1,1982, addressed to Garg at a California address, the Board requested a return of California sales tax but only received a copy of the certificate of exemption. The Board determined that $25,808 in tax, plus penalties, was due, and on May 13,1982 sent, also to the California address, a notice of determination to that effect. On June 12, 1982, the Board sent a demand for immediate payment. Garg did not receive the notice of determination or the demand for payment, but learned of the tax liability for the first time in 1984 when the Board sent him a statement in Ohio. In February of 1989, the Board recorded a notice of tax lien, and in June of 1990, it filed suit to collect the tax.
 
 (Garg I, supra,
 
 16 Cal.App.4th 359.)
 

 The trial court entered judgment for Garg, finding the Board’s action was barred by the statute of limitations, and also awarded attorney fees pursuant to section 7156, based upon a finding that the action was not “substantially justified.” In its statement of decision, the trial court reasoned as follows: “[T]he State . . . was required to file an action within three years from the time its tax became due and payable. The three year period ran on June 14, 1985. . . . This action was not filed until June 19, 1990. The recordation of the notice [of tax lien in 1989] could not . . . serve to vitiate the general limitations period of three years which had already run. Such construction would render the three year provision of the statute meaningless, as it would be effective only on the whim of the State. The reasonable and equitable construction is that the recordation of the notice of tax lien can only save an action to foreclose the tax lien, not an action seeking a personal judgment against the taxpayer. In this manner all of the provisions of
 
 Revenue and Taxation Code § 6711
 
 are harmonized and given effect.” (Underlining and italics in original.) We agreed with the trial court’s reasoning, affirmed its judgment, and awarded costs on appeal to Garg.
 
 (Garg I, supra,
 
 16 Cal.App.4th at p. 364.) When the trial court awarded attorney fees as part of the cost award on appeal, the Board filed a second appeal, challenging the court’s finding that the Board’s position had not been “substantially justified” within the meaning of section 7156. In
 
 Garg II, supra,
 
 B089773, we affirmed the award to Garg of his attorney fees incurred in defending the appeal in
 
 Garg I;
 
 we reached that result because the Board had waived the
 
 *206
 
 issue of Garg’s entitlement to attorney fees by failing to object when such fees were requested by Garg prior to the entry of judgment in
 
 Garg I
 
 and again failing to challenge the award when it had an opportunity to do so by way of a postjudgment motion to tax costs.
 

 Meanwhile, somewhat inconsistently with its position that the attorney fee award was improper and should be reversed on appeal, the Board acted on September 10, 1993, to treat the fee award as a debt owed to Garg by the state and purported to offset this debt against the claimed tax pursuant to Government Code section 12419.4. Garg’s initial response to the Board’s offset of the litigation cost award against the claimed tax liability was to file, in the original tax collection action (People ex rel. State Bd. of Equalization v. Garg,
 
 supra,
 
 No. BC003842), a motion to compel payment and deny setoff. The court deemed that motion to be a motion to file a cross-complaint for refund of the tax collected by way of the setoff. The court granted the motion as so characterized, after first concluding that Garg had substantially satisfied the requirement of exhausting administrative remedies. A status and trial setting conference was set for February 15, 1994, and was subsequently continued to May 17, 1994.
 

 On May 16, 1994, Garg filed in (People ex rel. State Bd. of Equalization v. Garg,
 
 supra,
 
 No. BC003842 a cross-complaint for tax refund. However, at the status and trial setting conference, the Board argued the court had no jurisdiction to adjudicate such a complaint because the disputed tax had not been fully paid. Garg argued, in turn, that (1) he was not in reality seeking a refund of taxes, (2) the cross-complaint for a tax refund was merely a legal fiction created by the court to get to trial on the merits of the underlying tax claim; and (3) Garg’s true objective in the action was an order finding the offset of attorney fees against the claimed tax improper
 
 ab initio,
 
 without regard to the validity of the tax claim, and compelling the Board to pay the fees. Hence, on May 24, 1994, with the agreement of the court, Garg filed the within action to compel payment of the cost award and invalidate the offset. The Board demurred to Garg’s complaint, contending that (1) under article XIII, section 32 of the California Constitution, the court had no jurisdiction to adjudicate the propriety of the tax collection action until Garg paid the claimed tax in full, and (2) Government Code section 12419.4 authorized collection of the tax by way of an offset of any amount owing to Garg by the state.
 

 The trial judge adopted the Board’s view that Garg’s action was properly characterized as one for a tax refund. However, the court found it had jurisdiction to adjudicate the action, because it found the cost award constituted the full amount of tax that the Board was entitled to collect, even if the
 
 *207
 
 tax were validly assessed, inasmuch as a personal action against Garg for any remaining amounts had previously been found time-barred, and there was no claim that Garg had other property within California from which to satisfy the claim. The court thus found the tax paid in full for all practical purposes, and concluded that Garg was entitled to proceed with an action for a refund. The court therefore overruled the Board’s demurrer, and the tax claim was tried on its merits. Based upon certain stipulated facts and evidence presented at trial, the court found that (1) the Board’s offset of $32,464.97 in previously ordered litigation costs and $6,492.99 in pre-offset interest thereon against the claimed tax was improper, and (2) Garg was entitled to an exemption from the tax. Accordingly, the court found Garg entitled to recover from the Board $38,957.96 plus additional interest and costs. This timely appeal followed.
 

 Contentions
 

 The Board contends the trial court was without jurisdiction to entertain Garg’s action, because the only way in which a taxpayer is entitled to contest a tax is by an action for a refund
 
 after
 
 payment of the disputed tax, and Garg has not paid the full amount of tax claimed by the Board. Garg disagrees and further argues that, without regard to the validity of the underlying tax claim, the Board’s purported offset was an improper seizure of court-ordered litigation costs which cannot properly be subject to an offset.
 

 Discussion
 

 1.
 
 The Controlling Statutes
 

 Section 7156, the statute under which attorney fees were awarded to Garg, was enacted as a part of the same piece of legislation which enacted the Taxpayers’ Bill of Rights. (Stats. 1988, ch. 1574, § 2, pp. 5682-5683; cf. fn. 4,
 
 ante.)
 
 The Taxpayers’ Bill of Rights sets forth a legislative finding that “. . . there is a delicate balance between revenue collection and freedom from government oppression.” (§7081.) The intent of the Legislature in enacting the Taxpayers’ Bill of Rights was twofold: (1) “to place guarantees in California law to ensure that the rights, privacy, and property of California taxpayers are adequately protected during the process of the assessment and collection of taxes,” and (2) “to promote improved voluntary taxpayer compliance. . . .”
 
 (Ibid.)
 
 The first goal of the Taxpayers’ Bill of Rights, that of citizen protection, is enforced primarily through section 7156, which authorizes taxpayers to recover their costs of litigation, including attorney fees, when the taxing authorities take a position in litigation that is unreasonable, or “not substantially justified.” By requiring the state to bear a
 
 *208
 
 taxpayer’s cost of litigation if the state asserts a substantially unjustified litigating position, section 7156 deters the state’s agents from asserting unreasonable and unfair claims and defenses against private citizens, and thereby preserves the balance between legitimate revenue collection and “government oppression.”
 

 Government Code section 12419.4, the statute which the Board claims authorized its action in this case, gives the state a lien for taxes against property belonging to the taxpayer and held by the state, and debts owed to the taxpayer by the state. Government Code section 12419.5 authorizes the State Controller, in his or her discretion, to set off any debt owed to the state against a debt owed to the same party by the state. Government Code section 12419.4 authorizes a state agency to use the setoff authorized by Government Code section 12419.5 in satisfaction of a tax liability.
 

 However, there is a statutory exception to the property which may be subjected to a lien under Government Code section 12419.4. That section, by its own terms, does not apply to a state employee’s salary or wages. The question that is raised by this case is whether there is also an implied-in-law exception to Government Code section 12419.4, which arises from section 7156 and the policies which it exists to enforce.
 

 Before we may consider this question, however, we must first examine the claim by the Board that article XIII, section 32 of the California Constitution, which generally precludes a taxpayer from litigating the validity of a tax until the disputed tax is paid in full, deprives the courts of jurisdiction to entertain Garg’s challenge to the offset of his attorney fee award against the claimed tax liability.
 

 2.
 
 The Court’s Jurisdiction
 

 The Board is correct in arguing that the California Constitution forbids a court from adjudicating the validity of a tax before the tax, together with interest and penalties, has been paid in full. Article XIII, section 32 of the California Constitution bars a court from issuing any “legal or equitable process . . . against this State or any officer thereof to prevent or enjoin the collection of any tax,” and further provides that
 
 “[a]fter
 
 payment of a tax claimed to be illegal,” an action may be brought to recover the tax paid. Together, these two portions of section 32 establish that a taxpayer’s sole legal avenue for resolving a dispute over the legality of a tax is a postpayment refund action.
 
 (Woosley
 
 v.
 
 State of California
 
 (1992) 3 Cal.4th 758, 789 [13 Cal.Rptr.2d 30, 838 P.2d 758];
 
 State Bd. of Equalization
 
 v.
 
 Superior Court
 
 (1985) 39 Cal.3d 633, 638 [217 Cal.Rptr. 238, 703 P.2d 1131].) The
 
 *209
 
 constitutional provision bars not only injunctions but also a variety of prepayment judicial declarations or findings respecting the validity of a tax or of preliminary steps in its assessment and collection.
 
 (State Bd. of Equalization
 
 v.
 
 Superior Court, supra,
 
 39 Cal.3d at p. 639;
 
 Pacific Gas & Electric Co.
 
 v.
 
 State Board of Equalization
 
 (1980) 27 Cal.3d 277, 278, 284 [165 Cal.Rptr. 122, 611 P.2d 463];
 
 Franchise Tax Board
 
 v.
 
 Superior Court (Bonds)
 
 (1989) 212 Cal.App.3d 1343, 1347 [261 Cal.Rptr. 236].)
 

 Here, the trial court erred when it held that the offset of court-ordered litigation costs against the tax claim constituted full payment of all amounts which the Board retained a right to collect from Garg after expiration of the statute of limitations to bring a personal action. If Garg has any liability for the tax, such liability survives despite the expiration of time to enforce it by means of a personal action.
 
 (Garg I, supra,
 
 16 Cal.App.4th at pp. 363-364.)
 
 [9]
 
 For at least as long as a tax lien against Garg remains in force, the tax claim survives and can be asserted against property which Garg may acquire within California. The disputed tax thus has not been paid in full, the trial court lacked jurisdiction to adjudicate the merits of the dispute, and the determination that Garg was exempt from the tax cannot stand. (Cal. Const., art. XIII, § 32;
 
 State Bd. of Equalization
 
 v.
 
 Superior Court, supra,
 
 39 Cal.3d at p. 638.)
 

 It does not follow, however, that the component of the judgment declaring the challenged offset to be improper is void or incorrect, even though that declaration was based upon the court’s finding that Garg was exempt from the tax—a finding which the court had no jurisdiction to make. A ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of law applicable to the case, it will be sustained.
 
 (Transamerica Ins. Co.
 
 v.
 
 Tab Transportation, Inc.
 
 (1995) 12 Cal.4th 389, 399, fn. 4 [48 Cal.Rptr.2d 159, 906 P.2d 1341];
 
 D’Amico
 
 v.
 
 Board of Medical Examiners
 
 (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10].)
 

 Here, Garg not only has claimed that the underlying tax claim was invalid, but also—indeed, primarily—contends that the purported offset was invalid
 
 ab initio,
 
 because such an offset would effectively nullify the attorney fee
 
 *210
 
 provisions of section 7156 and thus defeat the compelling public policies which animate that statute.
 
 [10]
 
 This alternative challenge to the offset does not concern the legality of the tax. Nor would disallowance of the offset on this alternative ground constitute an injunction against collection of the tax, although it would prohibit satisfaction of the tax claim
 
 from that particular fund.
 
 Thus, California Constitution, article XIII, section 32 is not implicated.
 
 [11]
 

 The Supreme Court has found that California Constitution, article XIII, section 32 restricts judicial actions which (1) “prevent or enjoin the collection” of a tax,
 
 and
 
 (2) are directed at “an integral part of the taxing process.”
 
 (Pacific Gas & Electric Co.
 
 v.
 
 State Bd. of Equalization, supra,
 
 27 Cal.3d at p. 280; see also
 
 People
 
 ex rel.
 
 Franchise Tax Bd.
 
 v.
 
 Superior Court
 
 (1985) 164 Cal.App.3d 526, 544-545 [210 Cal.Rptr. 695].) Judicial actions found impermissible include: (1) a declaration that a rate-adjustment measure adopted by a voter initiative was constitutionally invalid
 
 (Calfarm Ins. Co.
 
 v.
 
 Deukmejian
 
 (1989) 48 Cal.3d 805, 837-840 [258 Cal.Rptr. 161, 771 P.2d 1247]); (2) a writ of mandate and judicial declaration compelling adjustment of a real property assessment
 
 (Pacific Gas & Electric Co.
 
 v.
 
 State Bd. of Equalization, supra,
 
 27 Cal.3d at pp. 283-284); (3) a declaration that a disputed and partially paid tax was invalid and an order to refund the partial payment
 
 (State Bd. of Equalization
 
 v.
 
 Superior Court, supra,
 
 39 Cal.3d at pp. 640-642); and (4) an order denying a motion by the Franchise Tax Board to compel an insurance company to comply with an administrative subpoena duces tecum which required identification of policyholders
 
 *211
 
 claimed to be subject to income tax
 
 (People
 
 ex rel.
 
 Franchise Tax Bd.
 
 v.
 
 Superior Court, supra,
 
 164 Cal.App.3d at pp. 544-545).
 
 [12]
 
 Each of the foregoing cases involved a direct judicial interference with the government’s authority to set or adjust a particular tax rate, to tax particular property or activities, or to collect a tax. Each of the invalidated judicial actions was thus directed at “an integral part of the taxing process.” The lien created by Government Code section 12419.4 and the right of offset created by Government Code section 12419.5 are not integral parts of the taxing process; they are enforcement mechanisms, which Garg claims do not apply to an attorney fee award under section 7156. Our judicial determination that Garg is correct, and that the property involved in this case (i.e. Garg’s attorney fee award) is not subject to these enforcement mechanisms would not offend the prohibition of California Constitution, article XIII, section 32.
 

 We therefore conclude that, while the trial court lacked jurisdiction to decide the merits of Garg’s tax exemption claim, it did have the jurisdiction to consider whether, under the facts of this case, the litigation costs ordered by the trial court under section 7156 constituted a debt owed by the state which was subject to an offset under Government Code sections 12419.4 and 12419.5. We now proceed to the merits of that issue.
 

 3.
 
 The Propriety of the Setoff
 

 Garg argues that,
 
 regardless of the validity or invalidity of the underlying tax claim,
 
 the Board had no right to offset Garg’s attorney fee award against the claim. Garg argues that such a result would effectively nullify and make a mockery of the attorney fee provisions in section 7156, and would frustrate the important public policies of citizen protection which underlie the Taxpayers’ Bill of Rights. We agree.
 

 Under general and well-established principles of equity, either party to a transaction involving mutual debts and credits can strike a balance,
 
 *212
 
 holding himself owing or entitled only to the net difference.
 
 (Jess
 
 v.
 
 Herrmann
 
 (1979) 26 Cal.3d 131, 142 [161 Cal.Rptr. 87, 604 P.2d 208];
 
 Kruger
 
 v.
 
 Wells Fargo Bank
 
 (1974) 11 Cal.3d 352, 362 [113 Cal.Rptr. 449, 521 P.2d 441, 65 A.L.R.3d 1266].) California has multiple statutory setoff provisions, including, in addition to Government Code section 12419.5, Code of Civil Procedure section 431.70, which authorizes the setoff of cross-demands for money, and Code of Civil Procedure section 666, which
 
 requires
 
 a setoff where a cross-complainant’s recovery exceeds that of the plaintiff.
 

 In the usual case, an offset has the salutary effects of (1) eliminating a superfluous exchange of money between mutual debtors
 
 (Jess
 
 v.
 
 Herrmann, supra, 26
 
 Cal.3d at p. 137), and (2) protecting each party from the risk that the other may collect the debt owed to him or her, then default upon his or her own obligation.
 
 (Ibid.)
 
 However, the benefits of a setoff are sometimes outweighed by the risk of unfairness which may be created by allowing a setoff in specific circumstances. When this is the case, in light of the equitable origin of setoff rights, such rights may be restricted by judicial limitations imposed to uphold independent state policy.
 
 (Id.
 
 at pp. 142-143;
 
 Kruger
 
 v.
 
 Wells Fargo Bank, supra,
 
 11 Cal.3d at p. 367-368.)
 

 In
 
 Jess
 
 v.
 
 Herrmann, supra, 26
 
 Cal.3d 131, the mandatory setoff provided in Code of Civil Procedure section 666 was found inapplicable and improper between insured parties in comparative fault cases, because in such cases, a setoff of liabilities would be in conflict with California’s financial responsibility laws. (Veh. Code, § 16000 et seq.)
 
 (Jess
 
 v.
 
 Herrmann, supra, 26
 
 Cal.3d at pp. 138-143.) The Supreme Court reasoned that, “a mandatory setoff rule in the typical setting of insured tortfeasors does not serve as an innocuous accounting mechanism or as a beneficial safeguard against an adversary’s insolvency but rather operates radically to alter the parties’ ultimate financial positions. Such a mandatory rule diminishes
 
 both
 
 injured parties’ actual recovery and accords both insurance companies a corresponding fortuitous windfall at their insured’s expense.”
 
 (Id.
 
 at p. 138.) The court reasoned that such a result was unacceptable, as it would run directly contrary to the main objective of the financial responsibility law, which is to assure “ ‘monetary protection to that ever changing and tragically large group of persons who . . . suffer grave injury through the negligent use of [the] highways by others.’ ”
 
 (Id.
 
 at pp. 138-139, quoting from
 
 Continental Cas. Co.
 
 v.
 
 Phoenix Constr. Co.
 
 (1956) 46 Cal.2d 423, 434 [296 P.2d 801, 57 A.L.R.2d 914].)
 

 Similarly, in
 
 Kruger
 
 v.
 
 Wells Fargo Bank, supra,
 
 11 Cal.3d 352, the Supreme Court held that funds in a bank depositor’s account are not subject to the bank’s general right to set off such funds against a debt owed to the
 
 *213
 
 bank by the depositor, if the funds are derived from sources that are exempt from attachment and execution under former section 690.175 of the Code of Civil Procedure and section 1342 of the Unemployment Insurance Code. (11 Cal.3d at pp. 367-371.)
 
 [13]
 
 The
 
 Kruger
 
 court reasoned that “. . . the exercise of a banker’s setoff against unemployment and disability benefits diverts money intended by the state to pay the current living expenses of the unemployed and the disabled into payment of past debts accumulated by the bank, leaving the intended beneficiaries no alternative but to seek additional relief from the state. Thus to permit bankers’ setoffs against unemployment and disability benefits will frustrate the Legislature’s objectives in providing such benefits and in protecting them from seizure by creditors.” (11 Cal.3d at p. 367.) The court thus concluded that unemployment and disability benefits are immune from setoff.
 
 (Ibid.)
 

 The
 
 Kruger
 
 court cited “the venerable decision” of
 
 Beckman
 
 v.
 
 Manlove
 
 (1861) 18 Cal. 388 in support of its conclusion that setoff rights can be limited by the courts in order to protect debtor rights.
 
 (Kruger
 
 v.
 
 Wells Fargo Bank, supra,
 
 11 Cal.3d at p. 368.) In
 
 Beckman,
 
 a sheriff, Manlove, was successfully sued for wrongfully levying upon exempt property belonging to Beckman and Beckman’s partner.
 
 (Id.
 
 at p. 389.) Manlove then obtained an assignment of the original judgment against Beckman, on which the execution had previously issued. Manlove moved the court to set that judgment off against the wrongful execution judgment. The trial court denied the offset under the circumstances, and the Supreme Court upheld the denial, because (1) the requested offset would allow Manlove to take advantage of his own wrong, and (2) it would operate a practical repeal of the exemption laws.
 
 (Ibid.)
 

 In
 
 Bonelli
 
 v.
 
 State of California
 
 (1977) 71 Cal.App.3d 459 [139 Cal.Rptr. 486], the Court of Appeal applied against the state the same equitable principles under which setoffs were denied to private parties in
 
 Jess
 
 v.
 
 *214
 

 Herrmann, supra,
 
 26 Cal.3d 131,
 
 Kruger
 
 v.
 
 Wells Fargo Bank, supra,
 
 11 Cal.3d 352, and
 
 Beckman
 
 v.
 
 Manlove, supra,
 
 18 Cal. 388. In
 
 Bonelli,
 
 the State Controller set off under Government Code section 12419.5 pension benefits which were owed Bonelli’s widow against sums claimed to be owed to the state on account of bribes which Bonelli had evidently accepted from liquor licensees and applicants while a member of the Board. (71 Cal.App.3d at pp. 463-464.) The trial court ordered the Controller to release the funds and the Court of Appeal affirmed, reasoning that “[a]n opposing conclusion would tend to undermine rather than to maintain the integrity of the retirement system, despite the fact that one practical result, in the cases at bench, is that a possibly malfeasing state officer . . . has effectively denied the state the means of recovering any ill-gotten gains acquired by breach of his public trust. The exemption statute ([Gov. Code,] § 9359.3) which protects retirement benefits from invasion by ‘execution, garnishment, attachment, or any other process whatsoever’ must control over the more general setoff statute ([Gov. Code,] § 12419.5) if effect is to be given to the rule of law that pension legislation shall be liberally construed.”
 
 (Id.
 
 at p. 468.)
 

 Here, it is contended that the offset to which the Board claims a right under Government Code sections 12419.4 and 12419.5 would render ineffective the remedial provisions of section 7156 and weaken the power of the courts to enforce the Taxpayers’ Bill of Rights, which as noted above, was enacted in part “to place guarantees in California law to ensure that the rights, privacy, and property of California taxpayers are adequately protected during the process of the assessment and collection of taxes.” (§ 7081.) As we have also observed above, the litigation costs available under section 7156 are' the primary tool for enforcing the citizen protection goals of the Taxpayers’ Bill of Rights. By requiring the state to bear a taxpayer’s costs of litigation if the state asserts an unjustified litigating position, section 7156 deters overreaching by the taxing authorities. The deterrent effect of section 7156 would be defeated if the Board could simply set off section 7156 litigation costs against the disputed tax claim.
 

 Here, the Board initiated an action to collect a disputed sales tax claim. The trial court found the action to be time-barred, and further found that the Board’s interpretation of the applicable statute of limitations was not substantially justified. These conclusions were affirmed by this court in
 
 Garg I, supra,
 
 16 Cal.App.4th 357 and in our unpublished opinion in
 
 Garg II.
 
 The action was therefore dismissed as time-barred, and litigation costs were ordered under section 7156. The Board then endeavored to set off the cost award against the still-disputed tax claim, which the Board admits was entirely unenforceable as to any amounts beyond the setoff, unless Garg should subsequently acquire other property within California.
 

 
 *215
 
 In effect, the Board, by taking a position without “substantial justification,” created the asset from which it now seeks to satisfy its claim for tax. This the Board may not do. If the asset could be set off in the circumstances of this case, the Board would be allowed to profit from its own wrongful act, and, as Garg correctly argues, the salutary purposes of sections 7156 would be defeated, and the Board would have been given a penalty-free opportunity to enforce its tax claim by a personal action which the Board
 
 reasonably should have known
 
 was time-barred. In support of its right to offset the litigation cost award, the Board insists that the only permissible exceptions to the lien and setoff rights created by Government Code section 12419.4 and 12419.5 are those expressly provided in Government Code section 12419.4 for the salaries and wages of state employees. However, our Supreme Court has previously rejected the general notion that setoff rights are absolute unless explicitly limited by statute
 
 (Kruger
 
 v.
 
 Wells Fargo Bank, supra,
 
 11 Cal.3d at p. 368), and has held that a creditor’s right to setoff can, and should, be judicially limited in the interest of important and countervailing state policies.
 
 (Ibid.; Jess
 
 v.
 
 Herrmann, supra, 26
 
 Cal.3d at pp. 142-143.) The remedial provisions of section 7156 represent such a policy.
 

 For the above reasons, we conclude that if, in the course of asserting a claim for a tax, the state takes a position that is found by a court to be “not substantially justified,” and litigation costs are consequently awarded to the taxpayer under section 7156, the award may not be regarded as an ordinary debt owed to the taxpayer, which can be offset under Government Code sections 12419.4 and 12419.5.
 

 Disposition
 

 The trial court’s finding that Garg is exempt from sales tax under section 6366.1, subdivision (a), is ordered to be stricken. In all other respects, the judgment is affirmed. Costs on appeal are awarded to Garg.
 

 Klein, P. J., and Kitching, J., concurred.
 

 [1]
 

 Revenue and Taxation Code section 7156 provides in pertinent part that: “(a) In the case of any civil proceeding which is— [1(1) Brought by or against the State of California in connection with the determination, collection, or refund of any tax, interest, or penalty under this part [division 2, part 1, “Sales and Use Tax”], and [1(2) Brought in a court of record of this state, the prevailing party may be awarded a judgment for reasonable litigation costs incurred in that proceeding. [1 . . . [1(c) For purposes of this section— [1(l)The term “reasonable litigation costs” includes any of the following: [1(A) Reasonable court costs. [1(B) Based upon prevailing market rates for the kind or quality of services furnished any of the following: [1 . . . [1(iii) Reasonable fees paid or incurred for the services of attorneys in connection with the civil proceeding, except that those fees shall not be in excess of seventy-five dollars ($75) per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceeding, justifies a higher rate. [1(2) (A) The term ‘prevailing party’ means any party to any proceeding described in subdivision (a) (other than the State of California or any creditor of the taxpayer involved) which— [1(i) Establishes that the position of the State of California in the civil proceeding was not substantially justified, and [1(ii)(I) Has substantially prevailed with respect to the amount in controversy, or [1(H) Has substantially prevailed with respect to the most significant issue or set of issues presented. [1. . . [1(f) For purposes of
 
 *203
 
 this section, ‘position of the State of California’ includes either of the following: [qQ (1) The position taken by the State of California in the civil proceeding. [<JQ (2) Any administrative action or inaction by the State Board of Equalization (and all subsequent administrative action or inaction) upon which that proceeding is based.” Unless otherwise indicated, all statutory references are to the Revenue and Taxation Code.
 

 [2]
 

 Government Code section 12419.4 provides in pertinent part that: “The State has a lien for any taxes due the State from any person or entity, upon any and all personal property belonging to such person or entity and held by the State or amount owed to such person or entity by the State. This section does not apply to salary or wages owing to officers or employees of the State. Except as limited in this section this lien shall apply to all such property held or such amount owed by an agency of the State while such person or entity owes any taxes to that agency or another agency of the State. If the property held or amount owed is subject to Section 12419.5 of this code, the procedure set forth in that section shall be followed in enforcing liens created herein. . . .”
 

 [3]
 

 Government Code section 12419.5 provides in pertinent part that: “The Controller may, in his or her discretion, offset any amount due a state agency from a person or entity, against any amount owing that person or entity by any state agency . . . [¶] For purposes of this section, an amount owing to a person or entity by any state agency shall include any tax refund. . . .”
 

 [4]
 

 The Taxpayers’ Bill of Rights (§ 7080 et seq.) is one of two parallel statutory schemes which were enacted in 1988. (Stats. 1988, ch. 1573 and ch. 1574.) The Taxpayers’ Bill of Rights is administered by the Board of Equalization and applies to sales and use taxes. The other group of statutes, TTie Taxpayers’ Bill of Rights Act (§ 21001 et seq.) is administered by the Franchise Tax Board and applies to income taxes and bank and corporation taxes.
 

 [5]
 

 The exemption found by the trial court was that set forth in section 6366.1, subdivision (a), which exempts from sales taxes the gross receipts from the sale of and the storage, use, or other consumption of aircraft used by the buyer as common carriers.
 

 [6]
 

 Section 6711 grants the Board authority to “bring an action” to enforce a tax claim “[a]t any time within three years after any tax or any amount of tax required to be collected becomes due and payable and at any time within three years after the delinquency of any tax or any amount of tax required to be collected, or within the period during which a lien is in force as the result of the recording of an abstract under Section 6738 or the recording or filing of a notice of state tax lien under section 7171 of the Government Code. . . .” In
 
 Garg I,
 
 we concluded that, contrary to the Board’s claim, section 671 l’s grant of authority to “bring an action” impliedly differentiated between actions against persons and actions upon liens, and provided a distinct limitations period for each kind of action. (16 Cal.App.4th at pp. 361-362.) We rejected as “not a reasonable reading” the Board’s claim that section 6711 allows a personal action against a delinquent taxpayer as long as there exists a recorded lien, because a tax lien is indefinitely renewable; consequently, the Board’s interpretation would result in a statute of limitations without limitation. (16 Cal.App.4th at pp. 362-363.)
 

 [7]
 

 The parties inform us that yet a fourth appeal has been filed by the Board. On September 22, 1995, the trial court issued in the within action a ruling on a submitted matter, in which it awarded Garg attorney fees in the amount of $45,000 on the ground that the Board’s position in the litigation was not substantially justified. In so ruling, the court observed that the Board “with Gila monster like tenacity” had sought to collect taxes that were improperly assessed. The Board has appealed from this order in Court of Appeal case
 
 Garg
 
 v.
 
 People
 
 ex rel.
 
 State Bd. of Equalization
 
 (B098362, app. pending).
 

 [8]
 

 The facts relating to the history of the related actions between these parties up to the filing of this appeal are summarized from our opinions in
 
 Garg I
 
 and
 
 Garg II,
 
 of which we take judicial notice.
 

 [9]
 

 Nor is the liability a mere abstract or theoretical obligation. Section 6757 provides that delinquent sales and use taxes are enforceable as a state tax lien subject to title I, division 7, chapter 14 (§ 7150 et seq.) of the Government Code. Government Code section 7170 provides that a state tax lien attaches to after-acquired property and rights to property within California, as well as property belonging to the taxpayer when the lien is created. Government Code section 7224 provides that a notice of tax lien is effective for 10 years and is renewable at 10-year intervals.
 

 [10]
 

 The trial judge evidently agreed, explaining his decision to overrule the Board’s demurrer as follows: “My view is that. . . where a party prevails. . . in a tax matter, and then has the trial court judgment affirmed on appeal and the state then conveniently takes the costs and attorneys’ fees and applies them to the tax [which] the Court of Appeal said was not the personal obligation of the taxpayer, I think it thwarts the spirit of the judgment and the affirmance which contemplated that attorneys’ fees and costs would be awarded.” In addition, the trial court opined that the offset “violate[d] at least the spirit of the Taxpayer’s Bill of Rights.”
 

 [11]
 

 In effect, Garg’s challenge to the offset on the ground that it violates section 7156 is analogous to a claim of exemption from a tax levy, brought under Code of Civil Procedure section 688.030. That statute provides that “(a) Whenever pursuant to any provision of the . . . Revenue and Taxation Code (excluding Sections 3201 to 3204, inclusive). . . property is levied upon pursuant to a warrant or notice of levy issued by the state or by a department or agency of the state for the collection of a liability: [1(1) If the debtor is a natural person, the debtor is entitled to the same exemptions to which a judgment debtor is entitled. Except as provided in subdivisions (b) and (c), the claim of exemption shall be made, heard, and determined as provided in Chapter 4 (commencing with Section 703.010) of Division 2 [‘Exemptions’] in the same manner as if the property were levied upon under a writ of execution.” Neither a claim of exemption under section 688.030 nor Garg’s challenge to the offset of section 7156 attorney fees directly challenges the government’s right to collect a tax. In both cases, only the availability of a particular fund for satisfaction of the tax is at issue.
 

 [12]
 

 In addition to the cases discussed in this opinion, the Board has cited
 
 People
 
 v.
 
 Pacific Employers Ins. Co.
 
 (1973) 36 Cal.App.3d 296 [111 Cal.Rptr. 350],
 
 Sonleitner
 
 v.
 
 Superior Court
 
 (1958) 158 Cal.App.2d 258 [322 P.2d 496],
 
 Horack
 
 v.
 
 Franchise Tax Board
 
 (1971) 18 Cal.App.3d 363 [95 Cal.Rptr. 717] and several federal cases in support of its jurisdictional argument.
 
 Pacific Employers
 
 and
 
 Sonleitner
 
 stand for the proposition, not contested in this case, that interest and penalties are a part of any tax claim, which must be paid before the taxpayer may litigate the validity of the tax. (36 Cal.App.3d at p. 300; 158 Cal.App.2d at p. 263.)
 
 Horack
 
 stands for the proposition that, except where a taxpayer’s wages are sought to be levied upon, the federal Constitution is not violated by a scheme of tax assessment which provides for judicial review only after full payment of the tax, interest and penalties. (18 Cal.App.3d at p. 370.) The federal cases cited by the Board simply duplicate the rules that are stated in the California cases.
 

 [13]
 

 The exemptions formerly provided by Code of Civil Procedure section 690.175 are now found in Code of Civil Procedure section 704.120. That section exempts from execution, without the need of making a claim, employee and employer contributions to the Unemployment Compensation Disability Fund (§ 704.120, subd. (a)); exempts, without the need of making a claim, amounts held for payment of certain designated benefits (§704.120, subd. (b)); exempts, upon the filing of a claim, the benefits listed in subdivision (b)
 
 after
 
 payment (§704.120, subd. (c)); and restricts the exemption provided in section 704.120 where the subject funds are sought to be applied to child support obligations of the debtor. (§ 704.120, subds. (d) & (e).)
 

 Unemployment Insurance Code section 1342 provides, among other things, that benefits under that code are not subject to assignment, release or commutation, except for purposes of enforcing a child support obligation or a tax, or for voluntary payments into another employee-paid benefit plan.